

Peter A. Romero, Esq.
David D. Barnhorn, Esq.

Matthew J. Farnworth, Esq.

February 14, 2025

**VIA ECF**
Hon. Steven L. Tiscione
United States Magistrate Judge
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 910
Central Islip, New York 11722

    Re:    *Lidia Rivera v. A & D Precision Inc., et al.*
             Docket No.: 2:23-CV-08315 (ST)

Dear Judge Tiscione:

    This firm represents the Plaintiff, Lidia Rivera, in the above-referenced matter brought against Defendants A & D Precision Inc. and Wilfredo Carillo, for alleged violations of the Fair Labor Standards Act and New York Labor Law. Specifically, Plaintiff brings claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), as well as for failure to pay spread of hours pay under the NYLL, taking unlawful deductions from Plaintiff's pay under NYLL § 193, and for failure to issue an accurate wage notice and accurate wage statements with each payment of wages pursuant to NYLL §§ 195(1) and (3). D.E. 1. Through a rigorous mediation process, including one formal mediation session and subsequent inter-party negotiations, the parties have now reached a settlement in principle. Accordingly, Plaintiff now submits this motion for approval, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement. The parties' proposed Executed Settlement Agreement (the "Agreement") is attached as Exhibit A.

**Procedural History**

    On November 8, 2023, Plaintiff filed her Complaint. D.E. 1. On December 18, 2023, Defendants filed their Answer to the Complaint. D.E. 8. On February 16, 2024, the Court set an initial pre-trial discovery schedule, and the case was thereafter referred to mediation on May 21, 2024. The parties subsequently engaged in a full mediation session on August 21, 2024, with subsequent settlement discussions and communications between the parties related to the solvency of Defendants, until a settlement in principle was reached. Thereafter, the parties drafted their formal settlement agreement, which has been fully executed, and is attached hereto.

The settlement agreement between the Plaintiff and the Defendants provides for payment of a gross sum of $20,000.00, inclusive of attorneys' fees and costs. Pursuant to the Agreement, Plaintiff will receive a total of $12,756.00, and Plaintiffs' counsel will receive a total sum of $7,244.00, consisting of $6,378.00 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $866.00 for litigation costs, pursuant to the Agreement.[1]

**The Court Should Approve the Settlement Agreement as Fair and Reasonable**

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, as it relates to Plaintiff's FLSA claims, Plaintiff contends that Defendants employed her as an hourly paid laborer from on or about October 1, 2021, through August 25, 2023. Throughout her employment, Plaintiff contends that she regularly worked more than forty hours during each workweek. For this work, Plaintiff alleges that Defendants failed to pay her overtime wages at one and one-half times her regular rate of pay for all of her hours worked in excess of forty each week. For these hours, Plaintiff alleges she was paid at her straight time rate of pay in cash, instead of at a rate of one and one-half times her regular rate of pay. As a result, despite frequently working in excess of forty hours in a workweek, Plaintiff asserts that Defendants failed to pay her at her statutorily-mandated overtime rate of pay of one and one-half times her applicable regular rate of pay for all hours worked in excess of forty in a week, in violation of the FLSA and NYLL.

Critically, the parties have several key disputes that impact liability, damages and the ability to collect a judgment in this lawsuit. Defendants contest the number of hours

---

[1] In reassessing the costs expended by our office in preparation for this motion, Plaintiff's counsel's office discovered that the costs were inadvertently calculated at $870.00 when drafting and executing the Agreement, instead of the correct total of $866.00. This results in an unintended overpayment to Plaintiff's counsel of $4.00. In the event that this motion is approved, upon receipt of the settlement payment, Plaintiff's counsel will refund Plaintiff the $4.00 she should have received under the Agreement, which would bring her total amount received under the agreement to $12,756.00, as described above.

worked by Plaintiff each week, asserting that Plaintiff worked fewer hours each week than alleged. Defendants also contend that they paid more with each cash payment than Plaintiff alleges to have received. Additionally, Defendants contend that Plaintiff is not entitled to liquidated damages, whereas Plaintiff asserts that liquidated damages should be awarded because Defendants cannot establish that the alleged violations, if proven, were part of good faith efforts to comply with the FLSA. Each of these disputes will turn primarily on the credibility of each party's recollection of Plaintiff's employment, and the resolution of these disputes would have a significant outcome on liability and Plaintiff's damages at trial.

Finally, Defendants assert that they have limited financial resources and cannot afford a larger settlement or judgment. Plaintiff has obtained discovery into this issue and confirmed the concerns over Defendants' financial situation. Because of this, Plaintiff faces a significant risk that she could end up collecting little or even no monetary recovery, even if successful at trial.

Plaintiff calculated her damages in order to assess her best possible recovery in this litigation. Making all reasonable assumptions in her favor, according to Plaintiff's calculations, Plaintiff's best potential recovery under the FLSA at trial amounts to $10,890.00 in actual damages, and an additional $10,890.00 in liquidated damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in additional formal written and document discovery, and depositions of Plaintiff, Defendants, and likely several non-party witnesses. This settlement also avoids potential motions for summary judgment and a time consuming and risky trial, which could result in a months' or years' long delay to obtaining a potential recovery for the Plaintiff, even if they are successful, and avoids potentially facing future appeals. Notably, a trial in this lawsuit is particularly risky because liability and the amount of damages will likely turn upon the credibility of the parties. As a result, all parties face a serious risk of losing at trial, in whole or in part. Even if Plaintiff was successful on her overtime wage claims, but Defendants could prove that they made a good faith effort to comply with the FLSA and NYLL, Plaintiff would not be entitled to liquidated damages, reducing Plaintiff's available FLSA damages by half. Thus, by settling at this stage, Plaintiff ensures that she will receive a recovery in this matter. Additionally, even if Plaintiff was successful at trial, there is a substantial risk that Plaintiff would be able to collect only a small portion of the judgment or possibly be unable to collect any recovery under the judgment due to Defendants' limited financial resources. However, Plaintiff is receiving all of her actual damages and approximately 17% of her FLSA liquidated damages under the Agreement, even after deducting attorneys' fees.

Accordingly, although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the significant possibility that she could receive lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Thus, assuming this settlement is approved, Plaintiff will be able to recover the settlement funds more expeditiously, and with more certainty, than through a trial judgment.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, the release in the Agreement is limited

to wage-related claims. The release does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. See Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1-2 (S.D.N.Y. July 6, 2015); Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. March 30, 2015) (prohibiting releases that "purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues" but notes additional claims may be released in appropriate circumstances); Cheeks, 796 F.3d at 206 (noting judicial approval of settlements is necessary to avoid an "overbroad release" that waives all possible claims and to prevent potential abuse or overreach in settlements). Here, the release is narrowly tailored to release only claims relevant to the instant action. Likewise, the agreement does not contain a confidentiality clause or non-disclosure provision that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood, 2015 WL 4111668, at *1 (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181). Additionally, the agreement also does not contain a non-disparagement clause.

Finally, the reasonableness of this settlement is also assured by the involvement of a mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Here, the parties engaged in contentious negotiations requiring the assistance of a mediator at a formal mediation session. Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

### The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336). In this case, the portion of the settlement amount attributable to attorneys' fees is $6,378.00, or one-third of the net settlement amount after deducting for litigation costs.

Notably, while Courts may now award attorneys' fees in amounts greater than one-third of the total settlement sum, plus costs, Fisher v. SD Prot. Inc., 948 F.3d 593 (2d Cir. 2020), Courts have traditionally held that approval of attorneys' fees of 1/3 of the settlement sum, plus costs, is reasonable and routinely approve such terms in settlement agreements. Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Oxley v. Excellent Home Care Servs., LLC, 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), report and recommendation adopted, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) (citing Romero v. Westbury Jeep Chrysler Dodge, Inc., 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)) (noting "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable" in FLSA settlements and awarding plaintiff's counsel a fee of 1/3 of the net settlement after costs, plus an award of costs); Yong Yuan Wang v. Mandarin Glen Cove, Inc., 2019 WL 5695910, at *2-3 (E.D.N.Y. Sept. 30, 2019) (citing Romero, 2016 WL 1369389, at *2) (same); Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Courts have held that a one-third recovery is appropriate in a case where, as here, Plaintiffs' counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Thus, Plaintiff's counsel's requested fees of one-third of the net settlement sum after deducting for litigation costs is certainly reasonable.

Lastly, Plaintiff's counsel seeks reimbursement for $866.00 in advanced litigation costs, representing $402.00 for the filing fee for the Complaint, $164.00 for service of process for the Summons and Complaint, and $300 for the mediation costs. A copy of the applicable invoices are attached hereto as Exhibit B, and available at D.E. 1.

Accordingly, Plaintiff's counsel's request for attorneys' fees in the amount of $6,378.00 and expenses in the amount of $866.00 should be approved as reasonable.

In light of the foregoing, the parties respectfully request that the Court approve the parties' settlement and dismiss this matter with prejudice, while maintaining jurisdiction to enforce the terms of the settlement.

>Respectfully submitted,
>
>  **/s/ Matthew J. Farnworth, Esq.**
>MATTHEW J. FARNWORTH, ESQ.

C: All Counsel of Record *via* ECF